## L. M. S., Plaintiff-Respondent,

v.

## William Earl ATKINSON, Defendant-Appellant.†

### Court of Appeals

*No. 2005AP1450. Submitted on briefs December 7, 2005.
—Decided May 25, 2006.*

### 2006 WI App 116

(Also reported in 718 N.W.2d 118.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Marie A. Stanton* and *Andrew W. Erlandson* of *Hurley, Burish & Milliken S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott K. McCarthy* of *Roethe Krohn Pope LLP*, Milton.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J.   William Atkinson appeals a judgment awarding $103,000 plus costs to L.M.S., with whom the court found Atkinson had "numerous sexual contacts . . . over a period of at least two years" while she was a minor. Atkinson claims the circuit court, in denying his motion for a continuance and other pre-trial relief, wrongly penalized him for his attorneys' failures. He also claims the circuit court erred by relying in part on "other acts" evidence to reject his testimony that any touching of the plaintiff's breasts, buttocks and crotch area was inadvertent and incidental to his engaging in harmless tickling and horseplay with her. Finally, Atkinson complains that the circuit court's award of damages for future medical expenses is not supported by credible evidence.

¶ 2.   We affirm on all issues. Atkinson has failed to demonstrate that he suffered any specific prejudice to his defense of the plaintiff's claims on account of the circuit court's denial of his pre-trial motion for a continuance and other relief. We also conclude that, because Atkinson did not object to the admission of evidence that he had previously been reprimanded by the Chiropractic Examining Board for inappropriate conduct toward female patients, he waived his claim that the circuit court improperly considered that evidence. Finally, we affirm the future medical expense award because it is adequately supported by expert testimony given at trial.

## BACKGROUND

¶ 3. Atkinson does not directly challenge the circuit court's factual finding that Atkinson engaged in the improper conduct the plaintiff testified to at trial. Neither does he question the court's conclusion that, based on his tortious conduct, Atkinson should pay the plaintiff $60,000 in compensatory damages for past and future pain and suffering and $25,000 in punitive damages. Because Atkinson's only claims of error relate to pre-trial rulings by the circuit court, the court's consideration of one item of evidence and its award for future treatment expenses, we provide only a brief summary of the background facts that were testified to at trial.

¶ 4. The plaintiff's mother became romantically involved with Atkinson and moved into his residence, accompanied by her two children. The plaintiff, L.M.S., was then eleven-years-old. Several years later, when she was fifteen, L.M.S. accused Atkinson of touching her breasts, buttocks and crotch area on numerous occasions, beginning when she was "about 12 or 13." Shortly after L.M.S. made these accusations, her mother and the children moved out of Atkinson's residence. L.M.S. subsequently brought this action, alleging that Atkinson had "made continued, unwanted sexual advances, sexual assaults/batteries, and offensive bodily contacts." Atkinson retained a Milwaukee law firm to represent him in the case.

¶ 5. Pursuant to a May 2004 scheduling order, entered after a scheduling conference attended by counsel for both parties, the case was set for a three-day trial commencing March 21, 2005, with a final pretrial to be held on March 16. The order also specified deadlines for each party to disclose expert and lay witnesses. L.M.S.

moved for summary judgment on the question whether Atkinson committed the alleged tortious acts based on Atkinson's failure to respond to the plaintiff's requests for admissions of the acts. *See* WIS. STAT. § 804.11(1)(b) (2003–04) ("'The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves . . . a written answer or objection.").[1] At a February 3, 2005 hearing on the plaintiff's motion, Atkinson appeared in person and by an attorney from the firm representing him in the matter. This attorney informed the court that he was not familiar with the case and was only standing in for his partner who was lead counsel for the defendant and who apparently had a scheduling conflict for that time and date.

¶ 6. The circuit court made several rulings at the February 3 hearing. First, the court ruled that Atkinson was precluded from calling any witnesses, expert or lay, at trial because he failed to disclose his witnesses by the deadlines specified in the court's scheduling order. Second, the court ruled that the matters stated in plaintiff's requested admissions were deemed admitted in light of Atkinson's failure to file a response. The court agreed, however, to hold these rulings "in abeyance" for several days to allow Atkinson's counsel to submit materials from which the court might conclude the defense failures were due to excusable neglect. Finally, the court withheld a ruling on the plaintiff's summary judgment motion and continued the hearing until February 8. The court directed the attorney responsible for Atkinson's defense to file a motion for a finding of excusable neglect, with any supporting docu-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

ments, the day prior to the continued hearing, and further directed that attorney to be present at the continued hearing.

¶ 7. Atkinson's counsel filed a motion asking the court to (1) vacate the prior ruling deeming matters admitted, and (2) extend additional time for the defense to file a witness list and respond to "various" unspecified pleadings. At the continued hearing on February 8, 2005, Atkinson appeared in person and by the attorney whom the court had directed to appear with Atkinson. The attorney explained that health problems had prevented him from adequately representing Atkinson's interests in the litigation, and that Atkinson now wanted to terminate the representation by the present law firm and obtain different attorneys. The circuit court reviewed the standards for permitting the withdrawal of admissions under WIS. STAT. § 804.11(2) and reaffirmed its ruling that the matters specified in plaintiff's request for admissions were deemed admitted and that Atkinson would not be permitted to withdraw the deemed admissions. The court noted that "I still don't know if Mr. Atkinson is going to admit to some or all of the Requests for Admissions. There have been no answers at all, not even late, not even with a motion to extend the time and say, this is what I would have answered."

¶ 8. Regarding the naming of witnesses, the circuit court observed that Atkinson's counsel's request for additional time did not identify any witnesses he would call if given a renewed opportunity to do so. When questioned by the court whether he was prepared to disclose a list of witnesses, Atkinson's attorney replied that he was not. The court noted that the only excuse Atkinson's counsel had proffered related to his present health problems, which the court concluded "started . . .

560

after the damage was done in this case." Moreover, because plaintiff's counsel had timely disclosed his witnesses and their expected testimony, the court concluded that "it's prejudicial to [L.M.S.'s counsel] not to have a clue of what Mr. Atkinson's intentions are." The court also reasoned that, because the case involved a series of alleged incidents between the plaintiff and Atkinson that were apparently not witnessed by any third parties, it was unlikely that Atkinson would be able to name any fact witnesses other than himself.

¶ 9.  Concluding that Atkinson's counsel had not established excusable neglect, the court imposed what it deemed a reasonable sanction for violating the scheduling order:  "I don't intend to render a judgment by default against Mr. Atkinson . . . . Nor do I intend to, by letting the . . . [a]dmissions stand . . . imply that the facts admitted will be received in evidence; they could be objectionable." Rather, the court denied the plaintiff's motion for summary judgment on liability and indicated it would conduct the trial on both liability and damages. The court stated it would permit Atkinson to testify at trial "regardless of the answers he has disclosed." The court also said it would address the admissibility of any deemed admissions that might be objected to at trial. Finally, the court denied Atkinson's requests for a continuance and for permission for present counsel to withdraw, noting that Atkinson had not identified an attorney who would take over the representation for the scheduled trial dates, March 21–23, 2005.[2]

---

[2] Because neither party had tendered jury fees, the matter was to be tried to the court. The court noted that a letter from a law firm Atkinson had recently contacted stated that it would assume representation "only if the case were adjourned and a new scheduling order entered allowing reasonable time for

¶ 10. On February 23, 2005, the court received a letter signed by Atkinson in which he asked the court to permit him to withdraw his admissions, grant him "a reasonable time to name witnesses, and adjourn the trial to allow [him] to secure alternate counsel." Atkinson acknowledged in the letter that he had received assistance in preparing it from unnamed "other counsel." The letter was accompanied by a ten-page affidavit, plus attached exhibits, in which Atkinson detailed his present counsel's failings and his increasing exasperation with the inadequate representation he was receiving. The court replied in a letter to Atkinson that it would not act on a letter request and said it would only consider his request if a "proper motion" was filed, "with proper notice to the opposing party and to your attorneys with a specific hearing date."

¶ 11. Atkinson's counsel of record filed a motion on March 10, 2005 "to withdraw admissions, for leave to reopen discovery and to name witnesses and to adjourn trial." The grounds cited in the motion for granting the requested relief was "the points and authorities set forth" in Atkinson's previous letter to the court, in which Atkinson maintained the court had improperly sanctioned him for the faults of his attorney.

¶ 12. The court addressed this latest motion at the previously scheduled final pretrial conference on March 16, 2005. Atkinson appeared at the hearing/conference, but no one from Atkinson's law firm of record was present. The circuit court noted that it had "specifically denied any motion to withdraw" at the previous hearing and that counsel of record "were not absolved of the necessity to appear at the pretrial

investigation and discovery." The court concluded that granting such an open-ended request would not be fair to the plaintiff.

562

conference." The court also stated that it would send transcripts of the February 8 and March 16 proceedings to the Office of Lawyer Regulation, observing that "this lawsuit is turning into a legal malpractice action against" Atkinson's counsel of record. The court also stated that, at this point in the proceedings, "the real question is not whether [Atkinson's attorneys] have been negligent, and not whether their neglect was excusable, because I have already found that their neglect was not excusable, the real question remaining is whether the attorneys' conduct with the client has effectively sanctioned the client for the attorneys' conduct."

¶ 13. The court then compared the conduct of Atkinson's attorneys to the conduct of the attorneys in *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 470 N.W.2d 859 (1991). The court concluded that the present conduct was not so egregious that it should order the "extreme" sanction of judgment by default, as the trial court effectively had done in *Johnson* by dismissing the plaintiff's action with prejudice. It further concluded that the sanctions imposed (denial of the requests to withdraw admissions, to extend the time for disclosing witnesses and to continue the case) were "proportionate to the egregious nature of [Atkinson's attorneys'] errors, relating directly to the harm that their errors caused the plaintiff." The court considered the fact that Atkinson attempted to secure the services of only one other law firm, which had refused to take the case unless the trial date were postponed. The court noted that Atkinson could have made, but did not make, further attempts to find an attorney who would be able to assume his representation for the scheduled bench trial.

¶ 14. Atkinson had received a copy of the scheduling order from his attorney and the court concluded he could have monitored his attorneys' compliance with it. The court expressed its belief that Atkinson was capable of monitoring and assessing his attorney's performance because he had a professional degree, acknowledged having testified in court as an expert witness on numerous occasions and, thus, had experience interacting with attorneys. The court also determined that Atkinson's lengthy affidavit and copies of his correspondence with his attorneys showed that Atkinson was aware of their inadequate representation long before the February 2005 court proceedings but failed to take any action to obtain other counsel until a matter of weeks before the scheduled trial date.

¶ 15. The court concluded that, because Atkinson's "[n]eglect was not accidental" and his concerns were not something that "suddenly came up," it would not be fair to permit Atkinson, "who . . .is far more sophisticated than the average person," "to wipe the slate clean." The court summarized its conclusion as follows:

> This motion is denied. We will go to trial on Monday. I find that under these circumstances, at some point or another, there is a responsibility on the part of Mr. Atkinson for the acts of his attorney. He knew what was going on, or what wasn't going on, and he did nothing about it until it became an almost inevitability that he would have to either call their bluff and go to trial on this case, or ask for a continuance. And a continuance for [a] three day [trial], for me, would be into 2006. And that's simply unfair to the plaintiff.

¶ 16. The case was tried to the court as scheduled on March 21 and 22, 2005. Atkinson was represented at trial by his attorney of record, who questioned wit-

nesses and made argument on his behalf. Four witnesses testified: L.M.S., who was now eighteen; her mother; L.M.S.'s treating psychologist; and Atkinson. The court issued a written decision two weeks after trial, in which it found for the plaintiff and awarded her damages for past and future pain and suffering ($60,000), "future psychological treatment expenses" ($18,000), and punitive damages ($25,000). The court subsequently entered a judgment against Atkinson for $103,000, plus costs. Atkinson appeals, asking us to reverse and remand the case for "reasonable" pretrial proceedings and a new trial.

## ANALYSIS

### Denial of Request for Continuance and Relief from Sanctions

¶ 17.  Atkinson first and principally argues that the circuit court erroneously concluded that both he and his counsel were at fault for mishandling his defense. Relying on *Charolais Breeding Ranches, Ltd. v. Wiegel*, 92 Wis. 2d 498, 285 N.W.2d 720 (1979), Atkinson contends the circuit court erred by imputing his attorneys' negligence to him because "he acted as a reasonable and prudent person in engaging a lawyer of good reputation, has relied upon him to protect his rights, and has made reasonable inquiry concerning the proceedings." *Id.* at 514. Accordingly, Atkinson maintains the circuit court should have granted his requests for a continuance, for withdrawal of his deemed admissions and for new deadlines for conducting discovery and disclosing witnesses.

¶ 18.  We review the decision to grant or deny a motion for a continuance for an erroneous exercise of

discretion. *Schwab v. Baribeau Implement Co.*, 163 Wis. 2d 208, 216, 471 N.W.2d 244 (Ct. App. 1991). We will not reverse a circuit court's denial of discretionary relief if our review of the record shows that the circuit court in fact exercised discretion and there is a reasonable basis for its decision. *Id.* at 215. The question on appeal is not whether this court would, as an original matter, make the same rulings, but whether the circuit court erroneously exercised its discretion in ruling as it did. *Johnson*, 162 Wis. 2d at 273.

¶ 19.   We conclude, however, that it is not necessary in this case for us to decide whether the circuit court erred in denying Atkinson's motion to postpone the trial so that Atkinson could retain different counsel. A party who appeals the denial of a motion for a continuance must demonstrate that he or she suffered prejudice from the adverse ruling. *Allen v. Allen*, 78 Wis. 2d 263, 275, 254 N.W.2d 244 (1977); *Schwab*, 163 Wis. 2d at 216. We conclude that a party alleging error in the denial of a request for a continuance or other discretionary pre-trial relief must demonstrate, at a minimum, what would have happened differently had a continuance or other relief been granted and why the differences create a reasonable possibility of a different outcome. *See* WIS. STAT. § 805.18(2) ("No judgment shall be reversed or set aside or new trial granted . . . unless . . . it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."); *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶ 28, 246 Wis. 2d 1, 629 N.W.2d 768 ("For an error to affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action . . . .").

¶ 20. Atkinson argues in conclusory fashion that granting a continuance would have allowed him "a reasonable opportunity to secure new counsel and prepare a defense." However, he does not explain what the new defense would have been. He acknowledges that he had his "day in court" but claims that it was "entirely futile" because he had already " 'admitted' the plaintiff's core allegations and [had] no opportunity to call witnesses other than himself." The circuit court, however, relied on the trial testimony in making its findings, not on any deemed admissions. Atkinson neither identifies any witnesses, lay or expert, that could have been called at trial, nor does he explain what testimony any additional witnesses might have provided that would have undermined the plaintiff's case or strengthened his defense.

¶ 21. Atkinson goes on to say that he was

> represented at trial by an attorney who had done virtually nothing to prepare the case, had failed to take discovery, had failed to file a trial brief or any pre-trial motions, had failed even to appear for the final pre-trial conference, and who, just weeks earlier, had sworn to the court that he was medically incapable of trying a case.

Again, however, Atkinson gives no indication of what discovery might have uncovered, what issues might have been argued in a trial brief or raised in the unspecified "pre-trial motions," or in what way Atkinson's attorney performed deficiently at trial.[3] At-

---

[3] In his reply brief, Atkinson enumerates his attorney's deficiencies as follows:

Atkinson was forced to defend a sexual battery claim, which jeopardized his license to practice, which was brought in the community where he practices, represented by an attorney (1) who had done nothing to prepare for trial, (2) who had not deposed the

kinson asserts in his reply brief that "[d]elayed child sexual abuse cases are far from simple; they routinely involve expert testimony due to their complexity." He does not tell us, however, what an unspecified expert might have testified to that would have aided his defense.[4]

> plaintiff, (3) who had not obtained her medical records, (4) who had failed to request a jury, (5) who admitted, by default, facts which established Atkinson's liability, (6) who failed to file a trial brief, (7) who failed to appear for the final pretrial [conference], (8) who, just weeks before trial, swore in an affidavit that he was not fit to try the case, and (9) whose pretrial failures represented the worst conduct the circuit court had ever heard of.

Although this litany may accurately describe the many deficiencies in his counsel's performance, it does not explain what would have been different after a continuance with a different attorney representing Atkinson. We also note that, even with more able counsel and a later trial date, Atkinson would still have been "forced to defend a sexual battery claim, which jeopardized his license to practice," and we see no reason why the action would not still have been tried in the county where both the plaintiff and defendant resided and most of the tortious acts were committed.

[4] In support of the proposition that "[d]elayed sexual abuse cases . . . routinely involve expert testimony," Atkinson cites *State v. Haseltine*, 120 Wis. 2d 92, 96–97, 352 N.W.2d 673 (Ct. App. 1984). We find Atkinson's citation to *Haseltine* a curious choice of authority to support his claim that he was wrongly deprived of the ability to call an expert witness in aid of his defense. The defendant in *Haseltine* was charged with having sexual contact with his sixteen-year-old daughter. *Id.* at 93. The State presented testimony at trial from a psychiatrist "that there 'was no doubt whatsoever' that Haseltine's daughter was an incest victim." *Id.* at 95–96. We reversed the conviction, concluding that the psychiatrist's opinion testimony had invaded the province of the jury as the sole determiner of witness credibility. *Id.* at 96. In so doing, however, we acknowledged that "[d]epending on the case, the testimony of an expert might aid the jury. For example, an incest victim may not immediately

¶ 22. Although Atkinson's principal complaint seems to be the denial of his request for a continuance,

report the incest, or may recant accusations of incest. Jurors might reasonably regard such behavior as an indication that the victim was not telling the truth. An expert could explain that such behavior is common among incest victims as a result of guilt, confusion, and a reluctance to accuse a parent." *Id.* at 97.

L.M.S.'s treating psychologist, in addition to providing fact testimony regarding her treatment of the plaintiff, was permitted to give her opinions as an expert. Atkinson's counsel expressly waived objection to the psychologist's "qualifications to testify as an expert." The psychologist testified, among other things, that victims of sexual abuse "have difficulty reporting these things to their parents" because they often feel guilt or responsibility for the perpetrator's inappropriate behavior, are embarrassed by it and sometimes think they will not be believed. She also testified to the impact on victims stemming from the violation of a trusting relationship, the difficulty victims may experience in dealing with authority figures and the potential for future sexual dysfunction. Atkinson's counsel cross-examined the psychologist extensively, establishing that "victims react differently, depending on the fact situation"; that the psychologist could cite no statistics on "late reporting" by child sexual abuse victims; that some victims "will report the next day"; that her diagnosis of L.M.S. as suffering from "adjustment disorder" did not strictly meet the "DSM-IV" criteria for that disorder; and that the suicide of L.M.S.'s father when she was eleven or twelve-years-old was a significant "stressor" in her life that still affected her, as was dealing with her mother's recent cancer diagnosis.

In short, the plaintiff's psychologist gave expert testimony that was consistent with what we described in *Haseltine* as being appropriate in cases involving the sexual abuse of a child. Moreover, Atkinson's counsel was able to establish facts favorable to the defense from this witness. In the absence of any explanation of what additional testimony favorable to the defense could have been elicited from a separate expert, we cannot conclude Atkinson was prejudiced by not having another expert testify at trial.

he also contends the circuit court erred in denying his requests to withdraw admissions and to extend the time to disclose his witnesses. The denials of these requests are also discretionary trial court rulings. *See Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983) (withdrawal of admissions); *Glaeske v. Shaw,* 2003 WI App 71, ¶ 35, 261 Wis. 2d 549, 661 N.W.2d 420 (prohibition of witnesses for violating disclosure provision in a scheduling order).

¶ 23.  As with his challenge to the circuit court's denial of a continuance, Atkinson has not shown that he was prejudiced by not being allowed to withdraw his admissions or to present testimony from witnesses other than himself at trial. Although the court formally denied Atkinson's request to withdraw his admissions, it permitted him to testify at trial and based its findings wholly on the evidence adduced at trial. Nowhere in its memorandum decision does the circuit court cite reliance on Atkinson's deemed admissions as a basis for its decision to find him liable for his tortious acts against the plaintiff. And, as we have discussed above, Atkinson has not identified any witnesses or testimony he would have presented if given the opportunity to do so.

¶ 24.  In sum, Atkinson has given us no reason to believe the court's key credibility determinations would have been different had the trial occurred at a later date with a different defense attorney and additional, unspecified witnesses. We conclude Atkinson has not shown he suffered prejudice from any of the circuit court's pretrial rulings that he challenges in this appeal.[5]

---

[5] By rejecting Atkinson's first claim of error for failure to demonstrate prejudice, we do not wish to suggest that we

## Other Acts Evidence

¶ 25. Atkinson next contends the circuit court improperly considered "other acts" evidence, specifically, that the Chiropractic Examining Board reprimanded Atkinson in 1991 after investigating complaints of inappropriate conduct made by two female patients. Plaintiff's counsel elicited the following testimony, without objection, while cross-examining Atkinson at trial:

Q You received disciplinary action against your chiropractic license for inappropriate conduct; isn't that true?

A Yes.

Q And that was initiated by the complaints of many women. But ultimately only two followed through; is that true?

A I don't think that's a true characterization, sir. I am only aware of two stemming from a 1986 incident.

Q And as a result of that, the Chiropractic Examining Board required that you have another female present whenever you were examining a woman, for a period of three years; isn't that true?

A That's correct.[6]

believe the circuit court erred in any of the challenged rulings. We have described in some detail in the background section of this opinion the legal and factual bases the court cited in making its discretionary rulings.

[6] In addition to the quoted trial testimony, the record contains other evidence relating to the referenced disciplinary action. In support of her motion for summary judgment, the plaintiff submitted a copy of a 1991 "Final Decision and Order"

¶ 26. The circuit court commented on the prior disciplinary action against Atkinson in paragraph 12 of its written decision:

> The defendant admitted he was reprimanded in 1991 by the Chiropractic Examining Board, after complaints of improper sexual contacts made against him by two female patients in the mid-80s, after which for three years he was forbidden from examining a woman without a female assistant in attendance. This testimony tends to prove the defendant's absence of mistake, and his certain knowledge that improper touching of a female is wrong. Also, the similarity of improper touching between the conduct involving female patients and that alleged by the plaintiff is relevant, in that it tends to corroborate her testimony by showing a pattern of like behavior by the defendant involving other women.

¶ 27. Atkinson contends the circuit court's consideration of this testimony was improper because the issue at trial was not whether he knew that "improper touching of a female is wrong" but whether he touched L.M.S. inappropriately. He maintains, therefore, that the "Examining Board evidence was far more prejudicial to Atkinson than it was probative of any issue in the case." Although acknowledging that " 'other acts evi-

of the State of Wisconsin Chiropractic Examining Board, which includes the following order: "A female assistant must be present when any type of examination or procedure is performed by [Atkinson] on a female patient which requires the exposure of, or contact with, the intimate parts of the patient . . . ." The record also contains excerpts from Atkinson's deposition, where he admitted that "two patients," both women, made "allegations of inappropriate physical touching with their person" in 1986, which resulted in "mild disciplinary action against my license." The deposition excerpts were admitted into evidence at trial.

dence' receives greater latitude in sex cases," Atkinson asserts that under Wis. Stat. § 904.04(2) such evidence cannot be used to prove a person's character in order to show that he or she acted in conformity with that character. Atkinson also claims that, because the other acts were remote in time and involved adult patients, not children or adolescents, the prior incidents do not meet the requirements for "habit" evidence under Wis. Stat. § 904.06(2). He asserts, therefore, that the incidents that led to the professional discipline in 1991 are not relevant to the present dispute. Atkinson asks us to reverse the circuit court's decision for relying on irrelevant and prejudicial evidence.

¶ 28. The principal weakness in Atkinson's argument is that it relies on evidentiary rules that generally prohibit the admission of "other acts" evidence to prove a person's character, allow the admission of "habit" evidence only after a showing that a habit exists and permit a court to exclude evidence if it determines the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* Wis. Stat. §§ 904.03, 904.04(2) and 904.06. Atkinson, however, did not object at trial to the questions he was asked regarding the prior disciplinary action or to the admission of his deposition testimony on that topic, either for the reasons he now advances or on any other grounds. Thus, the question of whether the evidence was properly admitted is not before us. *See* Wis. Stat. § 901.03(1)(a).

¶ 29. We reject Atkinson's argument that we should reverse the trial court's decision because the court improperly considered evidence that might have been excluded (or admitted for only a limited purpose) if timely objection had been made. Because no objection was raised that the evidence was impermissible charac-

ter evidence under WIS. STAT. § 904.04, or that it lacked the proper foundation for habit evidence under WIS. STAT. § 904.06, the trial court was never asked to ignore the evidence or limit its consideration of the evidence to only certain purposes or issues. Similarly, because the trial court was never asked to weigh the probative value of the evidence against the danger of unfair prejudice, it had no reason to do so, and it is not our role to perform such balancing in the first instance. *See State v. Gollon*, 115 Wis. 2d 592, 604–605, 340 N.W.2d 912 (Ct. App. 1983) ("We will not find an abuse of discretion where the defendant failed to ask the trial court to exercise its discretion.").

¶ 30.   In short, by failing to object to the admission of the evidence in question, or to request the court to limit its consideration of the evidence in some way, Atkinson effectively waived his claim that the court improperly considered it. Atkinson's appellate argument rests entirely on evidentiary rules that he failed to call to the trial court's attention. As a result, there is no basis in the present record to support a reversal of the trial court's decision. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not . . . blindside trial courts with reversals based on theories which did not originate in their forum.").[7]

---

[7] The general appellate waiver rule is that, for reasons of judicial economy, we will typically deny an appellant the opportunity to raise an issue on appeal that was not raised in the trial court. *See State v. Erickson*, 227 Wis.2d 758, 766, 596 N.W.2d 749 (1999); *State v. Caban*, 210 Wis. 2d 597, 604–605, 563 N.W.2d 501 (1997). In many cases, an appellant's belated claim that a fact-finder's consideration of unobjected-to evidence violates principles embodied in the rules of evidence will also be virtually unreviewable. Had the trial court not included in its

¶ 31. Finally, we note that even if we were to overlook the waiver and conclude that the court's consideration of Atkinson's prior disciplinary action was improper, that conclusion, standing alone, would not prompt us to reverse. Atkinson has not persuaded us that there is a reasonable possibility that the court's consideration of the evidence of his prior disciplinary action affected the outcome of this litigation. *See Evelyn C.R.*, 246 Wis. 2d 1, ¶ 28. Moreover, Atkinson makes no claim that the circuit court's ultimate findings were clearly erroneous, which is the conclusion we would need to reach before reversing the court's factual findings. *See* WIS. STAT. § 805.17(2).

¶ 32. The court's discussion of the evidence at trial and its findings encompass some twenty-five paragraphs, of which only one, which we have quoted in its entirety above, is challenged by Atkinson for relying on irrelevant evidence. The court noted in its decision, and we agree, that the plaintiff's testimony at trial was supported to a significant degree by such things as:

_____

written decision a paragraph describing its consideration of the prior disciplinary action, we would not know what role, if any, the evidence played in its determination to accept the plaintiff's trial testimony over Atkinson's, even though the court might have tacitly viewed the evidence in precisely the same way. Moreover, when a case is tried to a jury, we have before us only one-word answers to verdict questions reflecting the jury's findings, and we can never know what use jurors might have made of any unobjected-to evidence introduced at trial. Thus, we conclude that the better rule in most, if not all, cases is that disputes over the relevance of an item of evidence, its probative value, or its potential for unfair prejudice must be raised and decided at the point the evidence is offered, not after the fact-finder has been allowed to consider the evidence without caution or limitation.

(1) the testimony of her mother regarding the actions the mother took and her description of Atkinson's behavior and actions after the allegations came to light; (2) the treating psychologist's testimony regarding the reactions and symptoms L.M.S. presented in treatment; and (3) inferences that could reasonably be drawn from Atkinson's failure to deny the allegations when first confronted by the plaintiff and the contents of notes he wrote to the plaintiff and her mother.

¶ 33.   In sum, we cannot conclude either that the court's consideration of the prior disciplinary action played a dispositive role in its decision, or that the court's findings were clearly erroneous solely because it considered the evidence in the manner that it did.

*Award of Future Medical Expenses*

¶ 34.   Atkinson's final contention is that the circuit court's award of $18,000 for future medical expenses lacks proper record support. The court based the award on the testimony of a licensed psychologist who treated L.M.S. after she came forward with the allegations against Atkinson in January 2002. The psychologist testified that, depending on her progress, the plaintiff will need monthly sessions annually during her twenties and, possibly, into her thirties. She testified that she currently charged $100 per hour for such therapy. The court awarded "$18,000, of which $15,000 is allocated for the years from now, when the plaintiff is 18, until she reaches 30, and an additional $3000 is allocated for future therapy as needed for the rest of her life beyond 30."

¶ 35.   In order to sustain an award of future healthcare expenses:   "(1) there must be expert testi-

576

mony of permanent injuries, requiring future medical treatment and the incurring of future medical expenses; and (2) an expert must establish the cost of such medical expenses." *Weber v. White*, 2004 WI 63, ¶ 20, 272 Wis. 2d 121, 681 N.W.2d 137. Mathematical certainty, however, is not required for the determination of future medical expenses, and so long as the award is based on probability, not possibility, we may affirm it. *See id.*, ¶ 30. We conclude that the psychologist's trial testimony meets the requisite standard. The psychologist's testimony regarding L.M.S.'s psychological injury, her treatment progress, the estimated frequency of future sessions and the duration of her future treatment needs provides sufficient support for the circuit court's damage award for future treatment expense.

## CONCLUSION

¶ 36. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.