COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2019AP656**

Cir. Ct. No.  2016CV8148

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

BRIAN A. LAMPE AND TRACEY LAMPE,

   PLAINTIFFS-RESPONDENTS,

UNITED PARCEL SERVICE, INC. AND AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

   INVOLUNTARY-PLAINTIFFS,

 V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

   DEFENDANT-APPELLANT,

STATE FARM FIRE AND CASUALTY COMPANY,

   DEFENDANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County:  CLARE L. FIORENZA, Judge.  *Reversed and cause remanded with directions.*

Before Kessler, Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. State Farm Mutual Automobile Insurance Company appeals from a judgment awarding Brian Lampe ("Lampe") and his wife, Tracey Lampe, damages in the amount of $175,000, which included a $45,000 award for Brian Lampe's future health care expenses.[1]    State Farm contends that the trial evidence was insufficient to support the jury's award of future health care expenses, and that the circuit court erred by denying State Farm's postverdict motion to change the jury's future health care expense award to zero.   We agree with State Farm.   Accordingly, we reverse the circuit court's judgment and remand the matter with directions that a judgment be entered which does not include any amount for Lampe's future health care expenses.

## BACKGROUND

¶2    The following facts are not in dispute.

¶3    In November 2013, Lampe was involved in a motor vehicle accident with State Farm's insured, Donald Hurry.  Lampe commenced this action against Hurry and his auto insurer, State Farm, alleging that Hurry's negligent operation of his vehicle caused permanent injuries to Lampe.[2]   The parties entered into a

---

[1]  For convenience, we will refer only to Brian Lampe throughout the remainder of this opinion.

[2]  Hurry died in July 2018 and was dismissed from the action by the circuit court for this reason.

stipulation that Hurry was negligent, and that Hurry's negligence was the sole cause of the accident. As a result of that stipulation, the sole remaining issue for the jury trial was the nature and extent of the injuries and damages sustained by Lampe.

¶4 The jury returned a special verdict awarding Lampe amounts for his injuries and damages, including $45,000 for future health care expenses. State Farm filed a postverdict motion under WIS. STAT. § 805.14(5)(c) (2017-18)[3] to change the jury's award of future health care expenses to zero on the ground that there was insufficient evidence advanced at trial to support the award. *See* § 805.14(5)(c) ("Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer."). The circuit court denied State Farm's motion and entered judgment in favor of Lampe against State Farm, including $45,000 plus interest for future health care expenses.

¶5 State Farm appeals. We will mention additional material facts in the discussion that follows.

## DISCUSSION

¶6 State Farm contends the circuit court erred in denying its motion to set aside the jury's award of $45,000 for Lampe's future health care expenses. Below, we set forth the governing legal principles, and then address whether the trial evidence was sufficient to support the jury's future health care expenses award.

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## I. Governing Principles.

¶7 On review of a motion to change a jury's answer to a special verdict question, this court affirms the jury's answer if it is supported by any credible evidence. *Kubichek v. Kotecki*, 2011 WI App 32, ¶14, 332 Wis. 2d 522, 796 N.W.2d 858; *see* WIS. STAT. § 805.14(1). We view the evidence in the light most favorable to the jury's determination, and we search the record for credible evidence that sustains the jury's answer. *Kubichek*, 332 Wis. 2d 522, ¶14; *see* § 805.14(1). In cases where, as here, the circuit court upheld the jury's findings on a postverdict motion, the standard of review "is even more stringent," and this court will not overturn the verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Kubichek*, 332 Wis. 2d 522, ¶14 (citing *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)). On the other hand, if there is no evidence to support any part of a verdict, then either the circuit court or an appellate court can change the jury's answer. *Lueck v. City of Janesville*, 57 Wis. 2d 254, 262, 204 N.W.2d 6 (1973) ("Conversely it can be said if there is not such evidence either court can change the answer as a matter of law."); *see also* *Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 461, 267 N.W.2d 652 (1978) (stating that a judgment that is based on "conjecture, unproved assumptions, or mere possibilities" cannot be upheld on appeal) (citation omitted).

¶8 In order to sustain a jury's award of future health care expenses, the following two criteria must be met: "(1) there must be expert testimony of permanent injuries requiring future medical treatment and the incurring of future medical expenses; and (2) an expert must establish the cost of such medical expenses." *L.M.S. v. Atkinson*, 2006 WI App 116, ¶35, 294 Wis. 2d 553, 718 N.W.2d 118 (citation omitted). "Mathematical certainty" is not required in the

determination of future health care expenses; "so long as the award is based on probability, not possibility," we affirm a fact finder's award of future health care expenses. *Id.*

## II. The Jury's Award of Future Health Care Expenses Was Not Supported by Sufficient Evidence.

¶9 State Farm contends that, for two reasons, the trial evidence was insufficient to support the jury's award of future health care expenses. First, Lampe did not present expert testimony that Lampe "would probably require future medical treatment as a result of [the] accident." Second, Lampe did not present expert testimony "as to the type, cost, duration or number of future treatments" that Lampe would require which are related to the accident. We need not, and do not, decide whether Lampe presented expert testimony establishing that he suffered permanent injuries that will require future health care treatment. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if a decision on one point is dispositive, we need not address other issues raised). Rather, we focus on State Farm's second argument and conclude that Lampe failed to present expert testimony establishing the cost of future health care treatments related to the accident and, as a result, the evidence adduced at trial was insufficient to support the jury's award of future health care expenses.

### A. Dr. Awan's Testimony.

¶10 Lampe argues that the deposition testimony of his expert and treating physician, Dr. Saleem Awan, established the type, number and cost of

5

Lampe's future health care expenses.[4]   We now consider the testimony of Dr. Awan that is material to this issue.

¶11   Dr. Awan began treating Lampe in August 2015.  Lampe reported to Dr. Awan that he was suffering from "neck pain, shoulder pain, [and] arm symptoms."  Lampe suffered "prior [to this auto accident from] degeneration in his cervical spine."   Dr. Awan testified "to a reasonable degree of medical probability," that the motor vehicle accident with Hurry "aggravated [a] pre-existing condition [in Lampe's spine] leading to [the] symptoms that [Lampe] was describing."

¶12   Dr. Awan performed on Lampe a "cervical radiofrequency ablation[] of the medial branch nerves of the facet joints."[5]  That is a procedure during which a portion of Lampe's nerves were burned with the "hope that [Lampe] won't feel pain coming from that area."  Lampe reported to Dr. Awan that "about 80 percent of his pain went away after" the ablation.  In April 2017, "over a year" after the first ablation was performed, Dr. Awan performed a second ablation on Lampe. After the second ablation, Lampe "again had [a] similar kind of response. [Lampe's pain] was 80 percent better."  Dr. Awan testified that, "to a reasonable

---

[4]  There is no dispute that Dr. Awan, an anesthesiologist and pain management physician, was qualified to testify as an expert witness under WIS. STAT. § 907.02(1).  Lampe does not contend that the testimony of any other expert at trial established the cost of his future medical expenses.

The record before this court on appeal does not contain the trial transcripts, so we are unable to say definitively what happened at trial.  However, both parties state in their briefs to this court that Dr. Awan's deposition testimony was submitted to the jury by Lampe, and we will assume that is correct.

[5]  For convenience, we will now refer to this procedure as an "ablation."

6

degree of medical probability," ablations were "necessary as a result of the injuries [Lampe sustained] from the car crash."

¶13    Dr. Awan also opined that Lampe had some residual pain and "[t]here is a possibility that [Lampe] might experience reoccurrence [of] the cervical radicular symptoms or cervical arthrogenic pain that may require some of the previous treatments that have been provided."  Regarding that same point, on cross-examination Dr. Awan testified as follows:

> [Counsel:]    And you're indicating in your report from what I understand is that whether he'll need any more procedures in the future, you really can't say to a reasonable degree of certainty, you can only say that he might, but it would just depend, true?
>
> [Dr. Awan:]    In my experience, probably he will, yeah. He will come back with the neck pain.  And depending on his symptoms, I expect that within the year the course that I've seen, I suspect that he will have another recurrence of his facet pain.
>
> [Counsel:]    And –
>
> [Dr. Awan:]    And we may need to have to repeat, yeah.
>
> [Counsel:]    *But in terms of what type of treatment you would provide, if any, would depend upon what his complaints were, true?*
>
> [Dr. Awan:]    *Correct.  It will depend on the symptoms at that time*.

(Emphasis added.)

## B.  Lampe's Argument.

¶14    Lampe does not argue that Dr. Awan expressed an opinion at trial regarding the type, cost, or number of future medical treatments for Lampe related to this accident.  Instead, Lampe argues that the jury came to its conclusion

concerning future health care expenses by extrapolating figures based on certain evidence. More particularly, Lampe asserts that medical bills describing prior medical treatment of Lampe by Dr. Awan were entered into evidence at trial, and those bills formed the basis of the jury's calculation of Lampe's future health care costs. Lampe's argument can be summarized as follows.

- Lampe's most recent pretrial ablation performed by Dr. Awan cost $3300.

- Lampe was fifty years old at the time of the jury's verdict.

- A life expectancy chart entered into evidence at trial projected a 29.2-year life expectancy for Lampe from the date of the jury's verdict.

- The jury "[c]onservatively project[ed]" that Lampe would need an ablation every two years until his projected death.

- From the date of the jury verdict until the end of Lampe's life expectancy, Lampe would have "almost" fifteen ablations.

- Lampe will "incur $49,500 in future medical costs throughout the [projected] duration of his life."[6]

---

[6] Lampe also argues that there is the possibility of other future treatments such as epidural steroid injections, "trigger point releases," and unspecified "other treatment types." However, Lampe gives no cite to the record regarding the costs or frequency of such treatments. As a result, there is no basis in the record to support a finding of future health care expenses regarding those particular treatments, and we will not consider those alleged treatments in our analysis. *See **Lechner v. Scharrer***, 145 Wis. 2d 667, 676, 429 N.W.2d 491 (Ct. App. 1988) (stating that we need not consider arguments not supported by references to the record).

## C. Analysis.

¶15    For the following reasons, we conclude that there is insufficient evidence in the record to support Lampe's argument regarding his future health care expenses.

¶16    First, a necessary premise of Lampe's argument is that the jury concluded that the total cost of Lampe's most recent ablation before trial was $3300.  Lampe cites to no opinion from Dr. Awan that the total cost of Lampe's most recent pretrial ablation was $3300.  Rather, to support that premise, Lampe cites only to a $3300 charge found on one line of the 34th page of seventy-four pages of Lampe's past medical bills entered into evidence at trial.[7]  For the same date as that ablation, the same medical bill shows nine other charges, including $546 for "sedation," and for various medications such as Fentanyl at diverse costs.  It is reasonable to assume that, before the ablation (which included the burning of a portion of Lampe's nerves), Lampe was given some type of sedation.  The only reasonable conclusion from the sole medical bill Lampe relies on is that the total health care expenses billed the day of the ablation were $4272.  Lampe does not explain, and we cannot discern, any reason why the jury would have chosen a $3300 charge for the ablation rather than the $4272 charge in making its calculation of future health care expenses.  So, Lampe's starting point for his argument collapses.

---

[7] Lampe does not cite to any testimony from Dr. Awan to establish that the procedure described on that one line of a medical bill is an "ablation" as defined above.  However, we will assume the $3300 charge is related to an ablation.

9

¶17 Second, another necessary premise of Lampe's argument is his hypothesis that the jury awarded future health care expenses to cover "almost" fifteen future ablations. More particularly, Lampe says that Dr. Awan anticipated that Lampe would require an ablation each year for the remainder of his life expectancy of 29.2 years. But, Lampe does not rely on that purported assertion of Dr. Awan. Instead, Lampe contends that the jury "[c]onservatively project[ed]" an ablation for Lampe every two years for the projected remainder of his life. Again, a premise of Lampe's argument fails. Dr. Awan never stated a timeline or the number of ablations that would be necessary for Lampe in the future. At best for Lampe, Dr. Awan stated that Lampe will probably be back to see him for pain within a year after the most recent ablation. Dr. Awan did not testify that Lampe would need an ablation every time his pain returned. So, the jury had no evidentiary basis to find that any particular number of repeat ablations will be needed by Lampe over the course of his remaining lifetime. Any such calculations underlying the jury's award of future health care expenses would have been based purely on speculation, which is an impermissible basis to support a jury's award of future health care expenses. *See Merco Distrib. Corp.*, 84 Wis. 2d at 461.

¶18 Third, the numbers proffered by Lampe do not support an award of $45,000 for future health care expenses. As noted, Lampe had a life expectancy at the time of trial of 29.2 years, and Lampe contends that the jury anticipated future ablations every two years. Those figures yield a number of future ablations between fourteen and fifteen. However, fifteen ablations over the course of Lampe's life does not equate to $45,000 future health care expenses. Instead, fifteen ablations at $3300 each equals $49,500 of future health care expenses. Even if the ablations will total fourteen in the future, that equals $46,200 for future health care expenses. Granted, it is not required that future health care expenses

be determined with mathematical certainty. *See L.M.S.*, 294 Wis. 2d 553, ¶35. However, no matter how one views Lampe's numbers, his speculations as to the jury's projections do not add up.

¶19 Accordingly, we conclude that the jury's award of future health care expenses was not supported by any credible evidence, and the circuit court erred in denying State Farm's motion to change the jury's answer regarding Lampe's future health care expenses. We thus reverse the judgment of the circuit court and remand this matter with directions to enter a judgment which does not include any amount for Lampe's future health care expenses.

## CONCLUSION

¶20 For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded with directions.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.