John P. Kubichek, Sr.,
Plaintiff-Respondent-Cross-Appellant,

Marinette County Department of Health
and Human Services, Involuntary-Plaintiff,

v.

Jay Kotecki,
Defendant-Appellant-Cross-Respondent,†

Wisconsin Mutual Insurance Company,
ABC Insurance Company and
DEF Insurance Company, Defendants.

Court of Appeals

*No. 2009AP2331. Submitted on briefs February 2, 2011.
—Decided March 24, 2011.*

2011 WI App 32

(Also reported in 796 N.W.2d 858.)

† Petition for Review Filed.

524

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of

*Claude J. Covelli* and *Andrew B. Hebl* of *Boardman, Suhr, Curry & Field LLP*, Madison, and *Jeffrey J. Gilson* of *Kaftan, van Egeren & Gilson SC*, Green Bay.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the brief of *Michael P. Konz* and *Erik L. Fuehrer* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J.   Jay Kotecki appeals a judgment, entered on a jury verdict finding him negligent for injuries sustained by John P. Kubichek, Sr. Kotecki argues: (1) no credible evidence supports the jury's negligence verdict; (2) public policy precludes Kubichek's recovery; (3) a new trial is necessary in the interest of justice; and (4) Kubichek's claim must be dismissed based on the doctrine of accord and satisfaction. We consider Kotecki's arguments nearly frivolous. We affirm on the appeal.

¶ 2.   Kubichek cross-appeals, arguing he is entitled to double costs and interest under WIS. STAT. § 807.01.[1] The trial court concluded Kubichek was not entitled to double costs and interest because his statutory offer of settlement was ambiguous and therefore invalid. We agree that Kubichek's offer was ambiguous. However, we conclude Kotecki's insurer, Wisconsin Mutual Insurance Company, had a duty to clarify this ambiguity. Wisconsin Mutual's failure to do so resulted in a valid offer of settlement. Consequently, we reverse on the cross-appeal. We remand and direct the circuit court to include double costs and interest in the judgment, pursuant to § 807.01.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

## BACKGROUND

¶ 3. On November 6, 2004, Kotecki, Kubichek, and Kubichek's son were felling trees on land owned by one of Kubichek's friends. Kotecki and Kubichek both had twenty years' experience felling trees. Additionally, Kotecki had worked full-time as a professional logger for three months in 1993, when he felled between forty and fifty trees per day.

¶ 4. Kotecki was in charge of cutting down the trees, Kubichek cut off the limbs and cut the trunks into logs, and Kubichek's son loaded the logs onto pickup trucks. The last tree they selected to cut was a dead oak between thirty and sixty feet tall. Another tree to the north of the oak had fallen on its own, and its upper branches were entangled in a third tree, leaving the fallen tree suspended at a diagonal. Kotecki decided to cut the oak so that it would fall to the north, hit the diagonally leaning tree, and knock it to the ground. Kotecki believed this maneuver would "kill two birds with one stone," yielding two trees with only one cut.

¶ 5. Kotecki informed Kubichek of his plan. Kubichek told Kotecki he had "never thought of doing anything like that before" and was going to step away. Kubichek walked thirty to forty feet southwest of the oak and leaned against a tree stump. Kotecki never told Kubichek to move farther away or to stand in a different location.

¶ 6. Kotecki began by cutting a notch in the north side of the oak. He then made a back cut on the opposite side of the trunk, which is the cut that causes a tree to fall. While Kotecki testified he was not sure whether he cut all the way through the trunk, both Kubichek and Kubichek's son testified Kotecki cut through the trunk completely. The oak fell onto the diagonally leaning

tree, but that tree did not give way as Kotecki had expected. Instead, the leaning tree held firm and acted as a fulcrum, abruptly lifting the butt end of the oak ten to twelve feet into the air. The oak then began to slide down the trunk of the leaning tree. The oak's branches became entangled, causing its butt end to pivot and swing toward Kubichek "like a baseball bat." Kubichek saw the oak coming toward him, but could not get out of the way before it hit him in the chest. Kubichek suffered massive injuries to his spinal cord, rendering him a quadriplegic.

¶ 7.   Kubichek sued Kotecki and his homeowner's insurer, Wisconsin Mutual, alleging Kotecki was negligent in felling the oak. In light of Wisconsin Mutual's $300,000 policy limit, Kubichek served counsel for Wisconsin Mutual and Kotecki with a statutory offer of settlement in the amount of $299,999. Counsel never responded to Kubichek's offer.

¶ 8.   At trial, Lee Schauman, a logging safety expert, testified for Kubichek. Schauman stated that the sawyer—the person cutting the tree—is responsible for the safety of people in the vicinity. Schauman opined that Kotecki, as the sawyer, violated at least two logging safety practices when cutting the oak. He testified that these violations caused Kotecki to lose control of the base of the oak, allowing it to move in an unanticipated manner.

¶ 9.   Specifically, Schauman testified that Kotecki violated safe logging practices by choosing to fell one tree into another. Schauman explained that felling one tree into another is dangerous because the sawyer cannot know how the two trees will react:

> [I]t just adds more question marks as to what the tree that you're felling is going to do after it hits the tree

534

that's hung up that [you're] trying to knock it down. Will it get hung up? There's all kinds of different things that can happen when those two trees come together. Those unpredictable issues just add to the danger of what you're trying to do.

Schauman also testified that Kotecki violated safe logging practices by cutting all the way through the oak. He explained that, in making a back cut, it is crucial not to cut all the way through the tree because "as soon as you cut a tree free from the stump, you've lost control of it and instead of controlling the tree, the tree controls you." The safe method of making a back cut is to leave a certain amount of the wood uncut, creating "hinge wood." The hinge wood gives the sawyer more control over the direction in which the tree falls and over the movement of the tree's butt end. Schauman also testified that, if Kotecki were at all uncertain as to how the oak would react when it struck the second tree, he should have warned Kubichek to move away from the area entirely.

¶ 10. Kotecki did not present any expert testimony to contradict Schauman. He conceded his chainsaw manual warned against felling one tree into another and warned about the necessity of maintaining hinge wood. He admitted that "[t]o avoid falling the tree into another tree would be common sense . . . ." He also testified that, given his prior experience in the logging industry, he was aware of the necessity of leaving hinge wood. The jury returned a verdict allocating seventy percent negligence to Kotecki and thirty percent negligence to Kubichek. The jury assessed Kubichek's total damages at $16,102,634.62.

¶ 11. Five days after trial, counsel for Kotecki and Wisconsin Mutual wrote to Kubichek's attorney offering Wisconsin Mutual's policy limit of $300,000 plus

535

costs "for a full and final resolution of this matter including a release of all claims against Jay Kotecki and Wisconsin Mutual[.]" Kubichek's attorney promptly declined the offer. Five days later, Kotecki and Wisconsin Mutual's counsel sent Kubichek's counsel a letter enclosing a $300,000 check. Unlike the earlier settlement offer, the letter did not state that the check represented "a full and final resolution of this matter[.]" Based on previous conversations, Kubichek's counsel believed Wisconsin Mutual was tendering its policy limit to prevent the accrual of further interest on its portion of the jury verdict. Kubichek's counsel gave the check to his office manager with instructions to deposit it in the firm's trust account. Kubichek's counsel did not examine the back of the check, which stated:

> The payee by endorsing this check acknowledges full settlement of claim or account shown on other side and in consideration of this payment hereby fully releases the maker hereof from all liability with respect to such claim or account.

¶ 12. Both Kotecki and Kubichek filed motions after verdict. Kotecki moved the court to change the jury's verdict answers on negligence, arguing there was no credible evidence supporting the jury's findings that Kotecki was negligent and that his negligence exceeded Kubichek's. Alternatively, Kotecki asked the court to grant a new trial in the interest of justice. Kubichek moved the court for prejudgment interest and double costs, pursuant to WIS. STAT. § 807.01(3) and (4). The circuit court denied the motions.

¶ 13. Kotecki then filed a brief in opposition to entry of judgment on the verdict, arguing the case had already settled and judgment was therefore barred by the doctrine of accord and satisfaction. Kotecki con-

tended Kubichek had accepted Wisconsin Mutual's $300,000 check as a settlement of all his claims. The court rejected this accord and satisfaction argument, and entered judgment on the jury verdict. Kotecki now appeals the judgment, and Kubichek cross-appeals.

## DISCUSSION

### I. Kotecki's appeal

*A. Evidence supporting the jury verdict*

■

¶ 14. When considering a motion to change the jury's answers to verdict questions, we view the evidence in the light most favorable to the verdict and affirm the verdict if it is supported by any credible evidence. *Richards v. Mendivil*, 200 Wis. 2d 665, 671, 548 N.W.2d 85 (Ct. App. 1996); *see also* Wis. Stat. § 805.14(1). We search the record for credible evidence that sustains the verdict, and if the evidence gives rise to more than one reasonable inference, we accept the inference the jury reached. *Morden v. Continental AG*, 2000 WI 51, ¶ 39, 235 Wis. 2d 325, 611 N.W.2d 659. The standard of review is even more stringent where, as here, the circuit court upheld the jury's findings on motions after verdict. *Id.*, ¶ 40. In such cases, we will not overturn the jury's verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979).

1. Negligence

■

¶ 15. Kotecki contends there is no credible evidence that he was negligent. A person is negligent when

he or she fails to exercise ordinary care. *Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350. "A person is not using ordinary care . . . if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Gritzner v. Michael R.*, 2000 WI 68, ¶ 22, 235 Wis. 2d 781, 611 N.W.2d 906 (quoting WIS JI—CIVIL 1005); *see also Schuster v. Altenberg*, 144 Wis. 2d 223, 231–32, 424 N.W.2d 159 (1988) (a party is negligent if it was foreseeable that the party's act or omission to act could cause harm to someone).

■

¶ 16. *Felling the oak into another tree.* Kotecki argues there is no credible evidence that felling the oak into another tree created a foreseeable, unreasonable risk of harm to Kubichek. However, Schauman testified that it is unsafe to fell one tree into another because of uncertainty regarding how the trees will react. Kotecki's chainsaw manual also warned that felling one tree into another is dangerous. Furthermore, Kotecki himself testified that "[t]o avoid falling the tree into another tree would be common sense[.]" There was ample evidence from which the jury could conclude that Kotecki's decision to fell one tree into another created a foreseeable, unreasonable risk of harm.

■

¶ 17. *Hinge wood.* Kotecki next contends there is no credible evidence that cutting through the hinge wood foreseeably created an unreasonable risk of harm to Kubichek. Schauman, the only logging safety expert who testified at trial, testified to the potential dangers that arise when a sawyer fails to leave hinge wood. One such danger is the loss of control over the butt end of

538

the tree. Schauman testified that, once control over the tree's butt end is lost, it becomes very difficult to predict how and where the tree will move. Furthermore, Kotecki himself testified he was aware of the necessity of leaving hinge wood. Kotecki also conceded his chainsaw manual warned that failing to leave hinge wood can result in loss of control over a falling tree. Credible evidence therefore supports a finding that Kotecki's failure to leave hinge wood foreseeably created an unreasonable risk of harm to Kubichek.

■

¶ 18. *Warning.* Kotecki also claims there is no credible evidence to support a jury finding that Kotecki negligently failed to warn Kubichek. However, Schauman testified that Kotecki, as the sawyer, was responsible for making sure the area was clear before cutting the oak. Kotecki informed Kubichek about his plan to fell the oak into another tree, but he did not warn Kubichek that he would be cutting through the hinge wood. Nor did he warn Kubichek about what effect cutting through the hinge wood could have, particularly in combination with felling the oak into another tree. Kotecki argues he had no duty to warn because the danger to Kubichek was open and obvious. *See Pagel v. Marcus Corp.*, 2008 WI App 110, ¶ 19, 313 Wis. 2d 78, 756 N.W.2d 447. We do not agree that this case involves an open and obvious danger. Here, the ordinary risks of tree felling were dramatically increased when Kotecki negligently cut through the hinge wood. Kotecki's negligent conduct created additional dangers that were not open and obvious, and Kotecki did not warn Kubichek of the increased risk he faced.

¶ 19. *Kubichek's location.* Kotecki argues the harm to Kubichek was not foreseeable because, given Kubichek's location, it was not foreseeable Kubichek

would be injured. Kotecki relies on Schauman's testimony that Kubichek was in a "zone of safety." However, Schauman actually testified that Kubichek was in a zone of safety when the cutting started. After Kotecki felled the oak into the leaning tree, cutting all the way through the hinge wood, Kubichek was no longer safe because Kotecki's failure to adhere to safe logging practices made the oak's movement unpredictable.

¶ 20. *Freak accident.* Kotecki also argues the harm to Kubichek was not foreseeable because Kubichek himself referred to the incident as the "freakiest of all freaky accidents." Kotecki takes Kubichek's statement out of context. Kubichek actually testified, "It was the freakiest of all freaky accidents because of what the tree did after it hit the other tree. But it still was an accident that could have been prevented if it was cut properly." Moreover, whether Kubichek and Kotecki actually foresaw the accident is not dispositive. The test for negligence is an objective, reasonable person standard. The operative question is whether a reasonable person would foresee that his or her actions create an unreasonable risk of harm. *Gritzner*, 235 Wis. 2d 781, ¶ 22. Here, credible evidence supports the jury's finding that the harm to Kubichek was foreseeable.

¶ 21. *Apportionment.* Kotecki next contends that, even if he was negligent, Kubichek's negligence was greater as a matter of law. Citing *Hertelendy v. Agway Insurance Co.*, 177 Wis. 2d 329, 338, 501 N.W.2d 903 (Ct. App. 1993), Kotecki argues that, in the comparative negligence context, a "plaintiff's negligence in confronting an open and obvious danger exceeds the defendant's

negligence as a matter of law." However, as previously discussed, the danger to Kubichek was not open and obvious.

¶ 22.   Kotecki also contends Kubichek's negligence is greater as a matter of law under the "baseball rule." "Essentially, the baseball rule prohibits a spectator who is injured by a flying baseball [from making] a claim against the team or other responsible parties" because the spectator has assumed the risk of injury by attending the game.[2] *Moulas v. PBC Prods., Inc.*, 213 Wis. 2d 406, 418–19, 570 N.W.2d 739 (Ct. App. 1997), *aff'd,* 217 Wis. 2d 449, 576 N.W.2d 929 (1998). Kotecki argues that Kubichek, as a spectator to the tree felling, assumed any risk of injury. However, Kubichek did not assume the risk that Kotecki would negligently cut through the hinge wood, thereby losing all control over the butt end of the oak. Moreover, the jury apparently took Kubichek's assumption of the ordinary risks of tree felling into account when it allocated thirty percent negligence to him. Credible evidence supports the jury's negligence apportionment. There is not "such a complete failure of proof that the verdict must be based on speculation." *See Coryell,* 88 Wis. 2d at 315.

2. Causation

¶ 23.   Kotecki contends there is no credible evidence that his failure to leave hinge wood was a

---

[2] While Wisconsin has abolished assumption of the risk as an absolute defense, a plaintiff's assumption of the risk may be considered as part of the comparative negligence analysis. *Moulas v. PBC Prods., Inc.,* 213 Wis. 2d 406, 419, 570 N.W.2d 739 (Ct. App. 1997), *aff'd,* 217 Wis. 2d 449, 576 N.W.2d 929 (1998).

substantial factor in causing Kubichek's injuries. *See Ollman v. Wisconsin Health Care Liab. Ins. Plan*, 178 Wis. 2d 648, 666, 505 N.W.2d 399 (Ct. App. 1993) (plaintiff must prove both negligent conduct and that the negligent conduct was a substantial factor in causing the injury). Kotecki did not raise this argument in his motions after verdict. He has therefore forfeited his right to raise it on appeal. *See Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 417, 405 N.W.2d 354 (Ct. App. 1987) (failure to include alleged errors in motions after verdict constitutes a waiver of those errors).

*B. Public policy*

¶ 24.   Even if a plaintiff establishes the elements of a negligence claim, a court may nevertheless preclude liability based on public policy considerations if:   (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; or (6) allowing recovery would enter a field that has no sensible or just stopping point. *Gritzner*, 235 Wis. 2d 781, ¶¶ 26–27. Any one of these six factors provides a sufficient basis to preclude liability. *Rieck v. Medical Protective Co.*, 64 Wis. 2d 514, 518, 219 N.W.2d 242 (1974). Whether public policy considerations preclude liability is a question of law that we review independently. *Gritzner*, 235 Wis. 2d 781, ¶ 27.

¶ 25. Kotecki contends the second public policy factor applies because Kubichek's injury is out of proportion to Kotecki's negligence. Kotecki argues Kubichek "was in a safe place and got injured by a freak accident." However, as previously discussed, Kubichek was not in a safe place, given Kotecki's decision to cut through the hinge wood. Furthermore, although Kotecki argues this was a "freak accident," it was Kotecki's own failure to follow safe logging practices that dramatically increased the risk of harm to Kubichek. The second public policy factor does not apply.

¶ 26. Kotecki next contends the third public policy factor applies because it is too highly extraordinary that Kotecki's negligence should have resulted in Kubichek's injuries. However, Schauman, Kotecki's chainsaw manual, and Kotecki's common sense all indicated that felling one tree onto another and failing to leave hinge wood can cause the sawyer to lose control of the tree, leading to dangerous consequences. Based on this evidence, the harm to Kubichek was not highly extraordinary. It was, as the jury found, foreseeable.

¶ 27. As to the fourth public policy factor—placing too unreasonable a burden on the tortfeasor—Kotecki contends that "recovery in this case would require future tort defendants to be highly accurate fortune tellers to avoid liability." He argues he could not possibly have protected against Kubichek's injury because he could not know precisely where the oak would fall. Yet, it was Kotecki who created this uncertainty by choosing to fell one tree into another and cutting through the hinge wood. Given Kotecki's negligence, it

543

would not take a highly accurate fortune teller to foresee that the tree would behave dangerously and uncontrollably as it fell.

¶ 28.   Lastly, Kotecki argues the sixth public policy factor applies because allowing recovery would enter a field that has no sensible or just stopping point. Kotecki contends, "If Kubichek can recover from Kotecki here . . . . [f]reak accidents will become reasonably foreseeable events, the occurrence of which will create liability." Again, we do not agree that this accident was unforeseeable. Kotecki knew that felling one tree into another and failing to leave hinge wood can cause a tree to behave in unpredictable and dangerous ways. That is precisely what happened in this case. The sixth public policy factor does not apply.

## C.   New trial in the interest of justice

¶ 29.   Kotecki next claims the circuit court erred by denying a new trial in the interest of justice because the jury's verdict is contrary to the great weight and clear preponderance of the evidence. *See Krolikowski v. Chicago & NW Transp. Co.*, 89 Wis. 2d 573, 580, 278 N.W.2d 865 (1979); WIS. STAT. § 805.15(1).[3] We owe great deference to a circuit court's decision denying a new trial because the circuit court is in the best position to observe and evaluate the evidence. *See Sievert v. Ameri-*

---

[3] WISCONSIN STAT. § 805.15(1) permits a party to "move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice."

*can Family Mut. Ins. Co.*, 180 Wis. 2d 426, 431, 509 N.W.2d 75 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 623, 528 N.W.2d 413 (1995). Thus, we will not disturb the circuit court's decision absent an erroneous exercise of discretion. *Id.* We will reverse only if the circuit court's decision is based upon a mistaken view of the evidence or an erroneous view of the law. *Id.*

¶ 30.  Here, the circuit court properly exercised its discretion by denying Kotecki's motion for a new trial. As discussed above, there was ample evidence on which the jury could conclude Kotecki was negligent. *See supra,* ¶¶ 16–18. The jury's verdict is not against the great weight and clear preponderance of the evidence.

¶ 31.  Kotecki next argues the interests of justice require a new trial "based on Kubichek's deception which distorted the facts that were presented to the jury." Kotecki takes issue with the admission of Exhibit 17, a manual for a Husqvarna model 51 chainsaw. Kotecki concedes he used a Husqvarna model 51 chainsaw to fell the oak that injured Kubichek. However, he contends the manual admitted into evidence is from 2001, while he purchased his chainsaw in 1993 or 1994.

██ ██

¶ 32.  Kotecki did not object to the admission of the 2001 chainsaw manual at trial. In fact, he acknowledged that the manual admitted into evidence was for the same make and model as his chainsaw. "Failure to make a timely objection to the admissibility of evidence waives that objection." *State v. Damon*, 140 Wis. 2d 297, 300, 409 N.W.2d 444 (Ct. App. 1987). Moreover, Kotecki's motions after verdict did not challenge the admissibility of the chainsaw manual, nor did they request a new trial in the interests of justice based on the manual. He has therefore forfeited his right to raise this argument on appeal. *See Ford Motor Co.*, 137 Wis. 2d at 417.

¶ 33.    Even assuming the circuit court improperly admitted the 2001 chainsaw manual, a new trial would not be warranted. The manual demonstrated that Kotecki failed to follow known logging safety practices. The jury had ample basis for finding the existence of the same safety practices by reference to evidence other than the manual. *See supra*, ¶¶ 8–10. Thus, even if the 2001 chainsaw manual had been ruled inadmissible, there is no reason to believe the jury would have reached a different result.

### D. Accord and satisfaction

¶ 34.    Finally, Kotecki argues Kubichek's claim must be dismissed based on the doctrine of accord and satisfaction. An accord and satisfaction is an agreement between parties to discharge an existing disputed claim. *Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979). The rule of accord and satisfaction provides that if a creditor cashes a check from a debtor which has been offered as full payment for a disputed claim, the creditor is deemed to have accepted the debtor's offer, notwithstanding any reservations by the creditor. *Flambeau Prods., Inc. v. Honeywell Info. Sys.*, 116 Wis. 2d 95, 101, 341 N.W.2d 655 (1984). An accord and satisfaction is a contract. *See id.* at 112. Where the facts are undisputed, the existence of a contract is a question of law that we review independently. *Gustafson v. Physicians Ins. Co.*, 223 Wis. 2d 164, 172–73, 588 N.W.2d 363 (Ct. App. 1998).

¶ 35.    The following two elements must be present for a court to find a valid accord and satisfaction:    "there

must be a good faith dispute about the debt; [and] the creditor must have reasonable notice that the check is intended to be in full satisfaction of the debt." *Flambeau Prods.*, 116 Wis. 2d at 110–11. Kotecki argues a valid accord and satisfaction exists because Kubichek's counsel deposited Wisconsin Mutual's $300,000 check. However, we conclude Kubichek did not have reasonable notice that the check was intended to be in full satisfaction of his claims.

¶ 36. First, the letter accompanying the check made no reference to settlement. Unlike Wisconsin Mutual's earlier settlement offer, the letter did not state that the check represented "a full and final resolution of this matter including a release of all claims against Jay Kotecki and Wisconsin Mutual[.]" Moreover, the letter specifically referred to motions after verdict, stating, "I expect to have my motions after verdict prepared and filed within the next two days." This implies that Wisconsin Mutual and Kotecki understood a settlement had not taken place. There would be no reason for Wisconsin Mutual and Kotecki to continue pursuing motions after verdict if they believed they had fully settled Kubichek's claims.

¶ 37. Second, contrary to Kotecki's assertions, the language on the check was not "unambiguous" and did not clearly indicate that the check was being offered in full settlement of Kubichek's claims. Kotecki relies on language found on the back of the check:

> The payee by endorsing this check acknowledges full settlement of *claim or account shown on other side* and in consideration of this payment hereby *fully releases the maker hereof* from all liability *with respect to such claim or account.* (Emphasis added.)

However, there is no "claim or account" shown on the front of the check. The front of the check contains the

547

name of the payer, Wisconsin Mutual, the name of the payee, Gabert, Williams, Konz & Lawrynk, LLP, and the amount. Nowhere on the front of the check is there any mention of Kotecki, Kubichek, a case number, or a claim number. In fact, there is no indication at all that the check has any relation to the present case. The language on the back of the check is therefore ambiguous. Additionally, the language on the back of the check only purports to release "the maker hereof" from liability. The front of the check shows that its maker was Wisconsin Mutual, not Kotecki. Thus, the check is also ambiguous with respect to whether it was offered in settlement of Kubichek's claims against both defendants, or only against Wisconsin Mutual.

¶ 38. Third, shortly before issuance of the $300,000 check, counsel for Kotecki and Wisconsin Mutual indicated to Kubichek's attorney that Wisconsin Mutual intended to tender its $300,000 policy limit to prevent the accrual of further interest on Wisconsin Mutual's portion of the jury verdict. And, less than one week earlier, Kubichek's attorney had specifically informed Wisconsin Mutual that his client would not accept a $300,000 settlement. Kubichek simply had no reason to believe that Wisconsin Mutual intended the $300,000 check to be a full settlement of Kubichek's claims.

## II. Kubichek's cross-appeal

¶ 39. In a cross-appeal, Kubichek contends the circuit court erred by denying his postverdict motion for double costs and interest. If a plaintiff submits a valid offer of settlement to defendants at least twenty days before trial, the defendants reject the offer, and the plaintiff recovers a more favorable verdict at trial, the

plaintiff shall recover: (1) double the amount of taxable costs; and (2) twelve percent annual interest on the amount recovered from the date of the offer of settlement until the date the amount is paid. WIS. STAT. § 807.01(3) and (4).

¶ 40. The validity of a statutory offer of settlement is a question of law that we review independently. *Kozlik v. Gulf Ins. Co.*, 2003 WI App 251, ¶ 18, 268 Wis. 2d 491, 673 N.W.2d 343. The general rule is that, to be valid, a statutory offer must be "absolutely unambiguous." *DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd. P'Ship*, 2004 WI 92, ¶ 34, 273 Wis. 2d 577, 682 N.W.2d 839. An offer is unambiguous if it allows the defendant to fully and fairly evaluate his or her own exposure to liability. *Id.* "[I]t is the obligation of the party making the offer of settlement to do so in clear and unambiguous terms." *Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 576, 538 N.W.2d 849 (Ct. App. 1995). Any ambiguity in the offer is construed against the drafter and results in a defective offer. *Id.*

¶ 41. Kubichek's statutory offer of settlement stated:

> NOW COMES the plaintiff, John P. Kubichek, Sr., by his attorneys of record, . . . and pursuant to [WIS. STAT. § 807.01(3) and (4)], hereby offers to settle the above matter for the amount of $299,999.00 with costs, subject to the approval of the Court.
>
> Failure to accept this Offer and failure to serve written notice of such acceptance within ten (10) days after receipt of this Offer may subject you to costs and interest under [WIS. STAT. § 807.01(3) and (4)].

The circuit court concluded Kubichek's offer was ambiguous because it did not account for the Marinette

County Department of Health and Human Services' Medicaid lien. We agree. When a case involves a subrogated party with a separate claim against the defendants, the plaintiff's offer of settlement is ambiguous if it fails to account for the subrogated claim. *See Hadrian v. State Farm Mut. Auto. Ins. Co.*, 2008 WI App 188, ¶ 8, 315 Wis. 2d 529, 763 N.W.2d 215; *Ritt v. Dental Care Assocs., S.C.*, 199 Wis. 2d 48, 78, 543 N.W.2d 852 (Ct. App. 1995). Here, Kubichek's offer did not account for Marinette County's subrogated claim. Accordingly, the offer was ambiguous.

■■

¶ 42.  Under the general rule, an ambiguous offer is invalid and does not entitle the offeree to double costs and interest under Wɪs. Sᴛᴀᴛ. § 807.01. *DeWitt*, 273 Wis. 2d 577, ¶ 34. However, our supreme court has carved out an exception to the general rule. In *Prosser v. Leuck*, 225 Wis. 2d 126, 136, 592 N.W.2d 178 (1999), the court held that an insurer has a duty to clarify any ambiguity in a settlement offer it receives with respect to whether the offer applies to only the insurer or both the insurer and the insured. The insurer's failure to clarify the ambiguity results in a valid offer pursuant to Wɪs. Sᴛᴀᴛ. § 807.01. *Id.* We conclude *Prosser's* rationale controls this case.

¶ 43.  In *Prosser*, the plaintiff served a $99,750 settlement offer on the defendant's insurer. *Id.* at 133. The offer was addressed only to the insurer and its attorneys. It did not mention the insured. The insurer never responded to the offer. The parties subsequently stipulated that judgment would be entered against the insurer in the amount of $100,000, the insurer's policy limit. *Id.* at 143. The plaintiff then asserted he was entitled to double costs and interest because he had received a judgment more favorable than the settle-

ment offer. The insurer contended the settlement offer was ambiguous and therefore invalid because it was unclear whether the offer proposed releasing the insurer alone or both the insurer and the insured. *Id.* at 139.

¶ 44. The supreme court agreed that the offer was ambiguous. However, it determined the offer should nevertheless be considered valid because the insurer had a duty to clarify the ambiguity and failed to do so. *Id.* at 141. The court acknowledged the general rule that the offeror is responsible for making an unambiguous offer of settlement. Yet it determined this general rule does not work well in the liability insurance context, where the insurer "must be concerned with and is responsible for not only its own interests and exposure to liability, but also the interests and [liabilities of its insured]." *Id.* at 137. The court noted that an insurer owes a fiduciary duty to its insured because the insured has given up something of value—the right to defend and settle a covered claim. *Id.* at 137–38. This fiduciary duty imposes certain obligations on the insurer, including the obligation to diligently investigate to ascertain facts upon which to base a good faith decision whether to settle. *Id.* at 138. The insurer cannot fulfill this obligation without clarifying whether an ambiguous settlement offer applies to only the insurer or both the insurer and insured. *Id.* at 139. The court noted, "Requiring insurers to clarify ambiguity in settlement offers is simply part of their long and well-established fiduciary duty to their insureds." *Id.* at 141.

¶ 45. The *Prosser* court also reasoned that requiring insurers to clarify ambiguous settlement offers is consistent with the purpose of Wis. Stat. § 807.01, which is to encourage settlement of cases prior to trial. *Id.* at 140. The court concluded, "[T]here is no reason

that an insurer, bound by its fiduciary duty, cannot make reasonable inquiries regarding ambiguities so that easily correctible errors do not compromise the utility of a settlement offer." *Id.* The burden on the insurer would not be too great—a simple letter or telephone call requesting clarification would suffice. *Id.*

¶ 46. Based on *Prosser*, we conclude Wisconsin Mutual had a duty to clarify Kubichek's settlement offer. Admittedly, the precise issue in *Prosser* was the insurer's duty to clarify ambiguity regarding whether a settlement offer applies to both the insurer and the insured. Here, the ambiguity relates to the settlement offer's failure to address a subrogated claim. Despite this factual difference, the *Prosser* rationale is applicable. In both situations, the insurer's fiduciary duty regarding settlement mandates that the insurer must clarify an ambiguous offer in order to fully protect its insured's interests.

¶ 47. Wisconsin Mutual was presented with an offer to settle Kubichek's case, which involved exposure in the millions of dollars,[4] for an amount within its $300,000 policy limit. Its insured, Kotecki, had surrendered his right to control the litigation to Wisconsin Mutual. Wisconsin Mutual owed him a fiduciary duty with regard to settlement of the case. As part of this fiduciary duty, Wisconsin Mutual was obligated to clarify Kubichek's ambiguous offer to settle. Because Wisconsin Mutual failed to clarify the ambiguity, Kubichek's offer is valid pursuant to Wis. Stat. § 807.01.

¶ 48. Kotecki cites two cases for the proposition that the *Prosser* rationale does not apply. In *Ritt,* 199

---

[4] Kubichek's undisputed past medical expenses alone amounted to $1.5 million.

Wis. 2d at 78, we held that a plaintiff's settlement offer was ambiguous and therefore invalid when it failed to address the interests of a subrogated party. In *Hadrian*, 315 Wis. 2d 529, ¶ 9, we similarly concluded a settlement offer that did not address an involuntary plaintiff's subrogated claim was invalid.

¶ 49.   These cases are not binding legal authority on the issue before us. *Ritt*, a 1995 court of appeals decision, was issued well before our supreme court's 1999 decision in *Prosser*. *Hadrian* was decided after *Prosser*, but did not address the extent of an insurer's fiduciary duty to clarify an ambiguous settlement offer. Instead, *Hadrian* relied on the general rule regarding ambiguous offers found in pre-*Prosser* decisions, without acknowledging that *Prosser* carved out an exception to that rule.

¶ 50.   Because Wisconsin Mutual had a duty to clarify Kubichek's ambiguous offer, and because it failed to perform that duty, Kubichek's offer is valid. The jury verdict exceeded Kubichek's $300,000 offer. Accordingly, Kubichek is entitled to double costs and interest. *See* Wis. Stat. § 807.01(3) and (4). We therefore remand and direct the circuit court to include double costs and interest in the judgment.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded with directions.