COURT OF APPEALS
DECISION
DATED AND FILED

June 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP35**

Cir. Ct. No. **2018CV332**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

TINA TRAHAN,

PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

STONE MANOR CONDOMINIUM ASSOCIATION, INC.,

PLAINTIFF-CO-APPELLANT-CROSS-RESPONDENT,

V.

ALBERT J. HINTON, AS TRUSTEE OF THE ALBERT J. HINTON &
GERALDINE L. HINTON JOINT REVOCABLE TRUST DATED AUGUST 24,
1998 AND GERALDINE HINTON, AS TRUSTEE OF THE ALBERT J.
HINTON & GERALDINE L. HINTON JOINT REVOCABLE TRUST DATED
AUGUST 24, 1998,

DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.

APPEAL and CROSS-APPEAL from a judgment of the circuit court

for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This action involves the interpretation of a ten-foot lake easement (the easement) granted to Albert Hinton in 1973. Tina Trahan, a current owner of the servient estate, and Stone Manor Condominium Association, Inc. argue that, as a matter of law, a pier is not allowed under the easement.[1] Stone Manor challenges the trial court's finding on partial summary judgment that the easement implicitly allowed for some sort of pier. The court held that a material question of fact existed as to whether the Hintons' pier complied with the terms of the easement. Following a four-day trial, the jury found that the Hintons' pier was reasonable and that the Hintons had not committed a trespass or a nuisance in the use of the easement. Stone Manor appeals from the final judgment in favor of the Hintons. The Hintons cross-appeal the court's denial of their claim preclusion and prescriptive easement arguments.

---

[1] Trahan owns six of the seven condominium units in a converted historic house located along the shores of Lake Geneva. Stone Manor owns the common elements surrounding the condominium. We will refer to the Plaintiffs-Appellants-Cross-Respondents as "Stone Manor." Albert and Geraldine Hinton own property near Stone Manor, and prior to the creation of the easement, the Hintons were co-owners with others in Geraldine Hinton's family—the Kurlands. We will refer to the Hintons and the Kurlands collectively and individually as "the Hintons."

¶2 We affirm. Prior to April 9, 1994, Wisconsin recognized the ability of a riparian landowner[2] to convey riparian rights by easement.[3] ***Konneker v. Romano***, 2010 WI 65, ¶27, 326 Wis. 2d 268, 785 N.W.2d 432. A landowner's riparian rights include the right to construct a pier. ***Id.*** As will be shown below, the Hintons' pre-1994 easement, while being silent as to whether a pier was allowed, did convey riparian rights to the Hintons, including the right (subject to Department of Natural Resources (DNR) regulations and express terms of the

---

[2] "'Riparian' means '[o]f, relating to, or located on the bank of a river or stream (or occasionally another body of water, such as a lake).'" ***Konneker v. Romano***, 2010 WI 65, ¶5 n.5, 326 Wis. 2d 268, 785 N.W.2d 432 (alternation in original) (citing *Riparian*, BLACK'S LAW DICTIONARY (7th ed. 1999)). "In the legal sense, a landowner whose property borders on a body of water has 'riparian rights,' meaning 'the right to make reasonable use of the water.'" ***Id.***

[3] In *Stoesser v. Shore Drive Partnership*, 172 Wis. 2d 660, 494 N.W.2d 204 (1993), *superseded by statute*, WIS. STAT. § 30.133 (2019-20), *as recognized in* ***ABKA Partnership v. DNR***, 2002 WI 106, ¶60, 255 Wis. 2d 486, 648 N.W.2d 854, our supreme court explained:

> Riparian rights are well defined in Wisconsin law. They include: the right to reasonable use of the waters for domestic, agricultural and recreational purposes; the right to use the shoreline and have access to the waters; the right to any lands formed by accretion or reliction; the right to have water flow to the land without artificial obstruction; the limited right to intrude upon the lake bed to construct devices for protection from erosion; and the right now conditioned by statute, to construct a pier or similar structures in aid of navigation.

*Stoesser*, 172 Wis. 2d at 666 n.2 (citing ***Cassidy v. DNR***, 132 Wis. 2d 153, 159, 390 N.W.2d 81 (Ct. App. 1986)). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

"Beginning on April 9, 1994, … no owner of riparian land that abuts a navigable water may grant by an easement or by a similar conveyance any riparian right in the land to another person, except for the right to cross the land in order to have access to the navigable water." WIS. STAT. § 30.133(1). Additionally, the "right to cross the land may not include the right to place any structure … in the navigable water." ***Id.*** Section 30.133 was the legislative response to *Stoesser*, which held that riparian rights can be conveyed by easement to nonriparian landowners. ***Konneker***, 326 Wis. 2d 268, ¶36; ***ABKA P'ship***, 255 Wis. 2d 486, ¶60; *but see* WIS. STAT. § 30.131.

easement) to place a pier in the lake bed. As the Hintons had riparian rights to place a pier, the only question was one of fact for the jury: was the Hintons' pier reasonable given the express terms of the easement? The evidence presented at trial was sufficient to support the jury's verdict.

*Facts*

¶3    On September 10, 1973, the Hintons conveyed by warranty deed a parcel of land that they owned, adjacent to Stone Manor, to Stone Manor's predecessors in interest. It is further undisputed that within that conveyance the Hintons reserved to themselves and their heirs and assigns a ten-foot easement over the property:

> Excepting and reserving from the above described real estate to the Grantors and each of them and each of his or her heirs and assigns a permanent easement upon the South ten (10) feet of said above described real estate or, if said South ten (10) feet is not passable then such 10 foot easement may be used at any point in the above described real estate, such easement to be used for passage of vehicles and persons on and across said real estate to the shore of Lake Geneva, said easement to be appurtenant to the Grantors' real estate located on the East side of Willow Street across from the above described parcel being sold; Grantor Hinton, his heirs and assigns, also *retains the right to maintain either an existing boat buoy in the lake in front of the above described easement or a boat lift station* on the shore of Lake Geneva at lake end of easement and to store a small row boat on the shore of Lake Geneva at the lake end of said easement; Grantors and each of them, their heirs and assigns, shall also have the right to park not more than two vehicles at the same time on said easement; provided that use of said easement or rights shall not interfere with Grantee's driveway or parking lot on the land above described.
>
> The above easement herein reserved with all of its provisions shall run with the land and shall inure to the benefit and use of each of the above named Grantors as the owners of contiguous land lying on the East side of Willow Street, their heirs and assigns.

4

(Emphasis added.)

¶4      Stone Manor brought suit against the Hintons in 2018.  Stone Manor sought judgment declaring the easement unenforceable, an injunction, and judgment on its nuisance and trespass claims.  The Hintons counterclaimed for a declaration of an express easement, or in the alternative, a prescriptive easement.  The parties filed cross-motions for summary judgment.  After a hearing, the trial court granted partial summary judgment to the Hintons, denying the motion to the extent that it sought dismissal of Stone Manor's claims, but declaring that the "[e]asement provides the Hintons with the right to place and maintain a pier to get from the shore of Geneva Lake to their boat lift station."[4]  The court determined that there was an issue of fact as to whether the current pier was reasonable under the easement.  After a trial, the jury found in favor of the Hintons on all issues, and the court entered judgment.

*Standard of Review*

¶5      The question presented in this appeal requires us to review a decision on summary judgment and the interpretation of a deed of easement. Whether the trial court properly granted partial summary judgment is a question of law that this court reviews de novo, and we apply the same methodology used by

---

[4] The trial court held a second summary judgment hearing on two additional issues:  the prescriptive easement counterclaim and the Hintons' claim preclusion argument.  The Hintons filed a motion for summary judgment on the issue of claim preclusion, arguing that the predecessor in interest to Stone Manor filed a lawsuit in 1982 seeking an injunction requiring the Hintons to remove the pier and restraining them from maintaining a pier on the property.  The Hintons asserted the 1973 easement as an affirmative defense and argued that the Hintons "had maintained a 'walkway' to his boat lift off the Easement for ten years prior to the 1982 Action." The court dismissed the 1982 action with prejudice for failure of the plaintiffs to appear at trial. There was a delay in alerting the court to the claim preclusion issue, as the Hintons allegedly forgot about the 1982 action.  The court denied summary judgment on both issues.

5

the trial court. ***Konneker***, 326 Wis. 2d 268, ¶22; *see also* WIS. STAT. § 802.08. "Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." ***Konneker***, 326 Wis. 2d 268, ¶22 (citation omitted).

¶6     Whether a deed is ambiguous is a question of law that we review independently, and if ambiguous, then the intent behind the language presents a question of fact. ***Id.***, ¶23. The construction of an unambiguous deed is a question of law. ***Id.***

*Discussion*

¶7     "An easement grants a right to use another's land." ***Garza v. American Transmission Co.***, 2017 WI 35, ¶23, 374 Wis. 2d 555, 893 N.W.2d 1 (citing ***Konneker***, 326 Wis. 2d 268, ¶25). The "dominant estate" (the Hintons) enjoys those privileges granted pursuant to the easement, and the "servient estate" (Stone Manor) permits the exercise of those privileges. *See **id.*** "While the servient estate may not unreasonably interfere with the dominant estate's right to use the easement, '[t]he use of the easement must be in accordance with and confined to the terms and purposes of the grant.'" ***Konneker***, 326 Wis. 2d 268, ¶25 (alteration in original) (quoting ***Stoesser v. Shore Drive P'ship***, 172 Wis. 2d 660, 668, 494 N.W.2d 204 (1993)); ***Hunter v. McDonald***, 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977).

¶8     As the Hintons' easement was created by deed, we look to that instrument in construing the relative rights of the landowners. ***Konneker***, 326 Wis. 2d 268, ¶26. "'Deeds are construed as are other instruments'; accordingly, 'the purpose of the court is to ascertain the intention of the parties.'" ***Id.*** (quoting ***Rikkers v. Ryan***, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977)). The information

contained in the four corners of the deed serve as the primary source to discern the parties' intent. *Id.* "If the language is unambiguous, it would be improper to resort to extrinsic evidence to ascertain the parties' intent." *Id.* Conversely, if the deed is ambiguous, meaning that it is susceptible to more than one reasonable interpretation, then we may look to extrinsic evidence to ascertain the parties' intent. *Id.*

¶9     In *Konneker*, the issue was whether a "lakefront easement, created by a deed that is otherwise silent as to the easement's use and purpose, grants riparian rights, including the right to construct and maintain a pier." *Id.*, ¶¶2, 27. As our supreme court stated in *Konneker*, "one of" "the riparian rights," that could be conveyed to nonriparian owners prior to 1994, was the right to place a pier. *Id.*, ¶27. However, the court made clear that the conveyance of riparian rights does not "inherently" allow for construction of a pier—rather, the question is whether the conveyance of riparian rights includes the right to construct and maintain a pier, which depends on the terms and purposes of the easement. *Id.*, ¶27 nn.9, 11.

¶10     In *Konneker*, the court found the deed ambiguous, as the easement language was "otherwise silent as to the easement's use and purpose":  "In particular, it is not clear from the deed whether the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier. Accordingly, the deed is ambiguous, and the court must resort to extrinsic evidence to ascertain the parties' intent." *Id.*, ¶¶5-6, 30. The court concluded that summary judgment was not a proper remedy to either the dominant or servient estate, as genuine issues of material fact existed as to whether the parties creating the deed intended the easement holder to have riparian rights, including the ability to have a pier. *Id.*, ¶¶32-33.

¶11    In the case before us, unlike in **Konneker**, the language of the easement is clear that the Hintons were granted riparian rights, and that the purpose was to use the lake shore for access to the lake and for boating. We, like the trial court, conclude that the Hintons' deed is unambiguous; thus, we look to the four corners of the deed. The deed clearly grants the Hintons some riparian rights, as the deed grants the Hintons access to Geneva Lake ("passage of vehicles and persons on and across said real estate to the shore of Lake Geneva") as well as the "right to maintain either an existing boat buoy in the lake in front of the above described easement or a boat lift station" in the lake bed. Thus, as the trial court found, the plain language indicates that the purpose of the easement was to provide access to Geneva Lake for boating. The 1973 easement thus provides the riparian right to place a pier. *See Stroesser*, 172 Wis. 2d at 668, 670 (the deed expressly providing the right "to use the lake shore for bathing, boating or kindred purposes" granted riparian rights to access the lake from the lake shore).

¶12    While the above analysis is dispositive, we further reject Stone Manor's argument that the easement's explicit reference to a row boat and boat lift effectively eliminates access via a pier. "We have long recognized that, implied in every easement, unless otherwise stated, is the right of the dominant estate to do what is reasonably necessary to enjoy the easement." *Garza*, 374 Wis. 2d 555, ¶29. The court in *Garza* explained,

> [T]he holder of an easement … is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. *The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate* or enterprise benefited by the servitude.

*Id.* (citation omitted).

8

¶13 Beyond the easement's grant of riparian rights that include the right to construct and maintain a pier, the pier placed by the Hintons was "reasonably necessary" to enjoy the easement under its plain terms. As the Hintons argue on appeal, "[b]y arguing that the Easement allows no pier at all, Stone Manor is saying that the Easement contemplates that the Hintons will wade into Geneva Lake to get to their boat lift, lower their boat, and clamber over the sides of the boat from the water. This is not a plausible interpretation of the Easement." We agree.[5] By example, in **Hunter v. Keys**, 229 Wis. 2d 710, 712, 600 N.W.2d 269 (Ct. App. 1999), we concluded that "the grant of an access and egress easement necessarily implies the right to create and maintain a suitable access way." Despite a lack of language allowing the holder of the easement to fill in wetlands or pave a road, we found these actions reasonably necessary to accomplish the purpose of the easement. *Id.* at 715-17; *see also* **Garza**, 374 Wis. 2d 555, ¶¶39-40 (despite explicit contradictory language in easement calling for "wood pole structures," court concluded that allowing other materials like steel was consistent with the easement's purpose). The pier was reasonably necessary to enjoy the purpose of the easement.

¶14 Stone Manor separately argues that the court erroneously exercised its discretion when it prevented an expert from testifying that "a pier is not necessary for use of the 1973 Easement." We review a trial court's decision to exclude expert testimony under the erroneous exercise of discretion standard.

---

[5] Stone Manor acknowledges that the boat lift must be in the water to be used. Nevertheless, they contend the Hintons could also use a row boat to get to their boat lift, contemplating that, instead of wading in the water, the Hintons could climb from one boat to another, including transporting gear and supplies. We find this interpretation to be equally implausible, as doing so would not only be difficult, particularly for those who are elderly or less agile, but would also be, at times, unwieldy and unsafe.

*Seifert v. Balink*, 2017 WI 2, ¶93, 372 Wis. 2d 525, 888 N.W.2d 816. We need not fully analyze this argument given our conclusions above. The only issue for the jury was whether the pier placed by the Hintons was reasonable given the language of the easement. The parties presented evidence as to the reasonableness of the Hintons' pier. Stone Manor's expert's opinion that "*a pier is not necessary for use of the 1973 Easement*" was not the question before the jury, and therefore the court did not erroneously exercise its discretion in excluding that opinion.[6] (Emphasis added.)

¶15 Finally, Stone Manor appeals from the trial court's denial of its motions after verdict pursuant to WIS. STAT. § 805.14(5)(c). Stone Manor argues that the jury's answers to Questions No. 1 and 3 should have been changed from "no" to "yes," as "the jury's answers ignored what was undisputed evidence and despite what should have been a ruling on a point of law."[7] "When considering a motion to change the jury's answers to verdict questions, we view the evidence in the light most favorable to the verdict and affirm the verdict if it is supported by any credible evidence." *Kubichek v. Kotecki*, 2011 WI App 32, ¶14, 332 Wis. 2d

---

[6] The trial court also made clear that it questioned the expert's conclusions as they contained "no explanation" as to why the Hintons did not need a pier. We see no error in the court's exercise of discretion.

[7] Question No. 1 asked, "Have the Hintons violated the Easement by placing, maintaining and using a boat lift and pier that are wider than the Hintons' riparian zone?" Question No. 3 asked, "Have the Hintons violated the Easement by placing their pier into Geneva Lake and attaching their boat lift in its current placement?" The jury answered both of these questions in the negative.

To the extent that Stone Manor is arguing that the questions should have never gone to the jury, as they involved a question of law, we note that the record indicates that Stone Manor never objected to these special verdict questions; in fact, they requested them. Failure to object at the jury instruction or verdict conference stage "constitutes a waiver of any error in the proposed instructions or verdict." WIS. STAT. § 805.13(3). As Stone Manor's arguments also focus on the sufficiency of the evidence, we will address its arguments.

522, 796 N.W.2d 858; *see also* WIS. STAT. § 805.14(1). "The standard of review is even more stringent where, as here, the [trial] court upheld the jury's findings on motions after verdict." ***Kubichek***, 332 Wis. 2d 522, ¶14. We will uphold the jury's verdict absent "a complete failure of proof that the verdict must be based on speculation." ***Id.*** (quoting ***Coryell v. Conn***, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)).

¶16     As addressed above, given the conclusion that the Hintons were within their rights to construct a pier, the question before the jury was whether the pier, as constructed, was consistent with the language of the easement. We conclude that the jury's verdict was supported by credible evidence. Jeff Reed, owner of Reed Construction, a company that does work building, placing, and repairing piers and rock sea walls on Geneva Lake, testified at trial. He explained that he had worked on a previous version of the Hintons' pier decades earlier in the 1980s when he was in his teens. According to Reed and based on his experience in the industry, the current location of the Hintons' boat lift, and thus implicitly the attached pier, is reasonable for use of their boat, given water levels and fluctuations. Reed further testified that in his opinion, the Hintons' pier does not "interfere[] with the riparian rights of any other riparian owners," including Stone Manor, and that he had no "problems" maneuvering "big barges" between the Hintons' pier and Stone Manor's pier to do his work each year. *See **Garza***, 374 Wis. 2d 555, ¶29 ("Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment." (citation omitted)). Accordingly, there was some evidence from which the jury could conclude that the current placement of the pier was reasonable and not a violation of the terms of the easement.

¶17　Specifically, Stone Manor takes issue with the "riparian zone" language in Question No. 1, explaining that the expert witness testified as to the size of the riparian zone based on WIS. ADMIN. CODE § NR 326.07(2), which he found to be no wider than the ten-foot width of the easement.[8]　Stone Manor suggests that the expert's testimony was uncontroverted.　As the trial court recognized, the language of the easement does not include any discussion of a "riparian zone."　Further, Stone Manor did not present any credible evidence that the parties intended to incorporate a riparian zone within the terms of the easement, nor has Stone Manor cited any legal authority for the conclusion that the *easement* limits the water access to a certain riparian zone.　As the Hintons had riparian rights and the easement itself did not expressly prohibit the pier, then the issue of the placement and size of the pier is under DNR control.[9]

¶18　There was contradictory evidence presented at trial in this case, and the jury was within its right to accept or disregard a witness's testimony.　*See* ***Weiss v. United Fire & Cas. Co.***, 197 Wis. 2d 365, 389-90, 541 N.W.2d 753 (1995) ("When there is *any* credible evidence to support a jury's verdict, 'even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict … must stand.'" (citation omitted)); ***Brogan***

---

[8] The present pier extends "65 feet into Geneva Lake."　While the Hintons state it is "12 feet wide," we note that the photos show a much narrower pier at the shoreline, but with the boat lift at its side, the width appears to be twelve feet at the end of the pier.

[9] "[WISCONSIN STAT. ch.] 30 embodies a system of regulation of Wisconsin's navigable waters pursuant to the public trust doctrine." ***ABKA P'ship***, 255 Wis. 2d 486, ¶11.　"Regulation and enforcement of this public trust rests with both the legislature and the DNR." *Id.*, ¶12; *see also* WIS. ADMIN. CODE § NR 326.07 (indicating "the department shall" utilize the proscribed methods "to determine whether a pier or boat shelter interferes with the right of an adjacent riparian").　Thus, the DNR and the legislature decide if one's use of riparian rights violate a riparian owner's rights.

*v. Industrial Cas. Ins. Co.*, 132 Wis. 2d 229, 239, 392 N.W.2d 439 (Ct. App. 1986) ("When the parties offer conflicting testimony by qualified experts, the issue becomes one of weight of the testimony and credibility of the witnesses, which is within the province of the jury. The jury may accept or disregard expert testimony." (citation omitted)). The jury finding can be summarized in its negative answer to Question No. 3 of the special verdict, which asked: "Have the Hintons violated the Easement by placing their pier into Geneva Lake and attaching their boat lift in its current placement?" We see no error in the court's failure to grant Stone Manor's motions after verdict.

¶19 In this case, the installation and use of a pier to access the boat lift is directly related to the purpose for which the easement was created: access to the lake for boating. As the court was correct that a pier was contemplated by the terms and purposes of the easement and as sufficient evidence supports the jury's verdict as to the reasonableness of the pier, we affirm.

*Cross-Appeal*

¶20 The Hintons cross-appeal in the alternative, claiming that Stone Manor's action was subject to claim preclusion and that they have a prescriptive easement for the pier. The court disagreed, concluding that claim preclusion did not apply and that the Hintons' assertion of a prescriptive easement failed as a matter of law. The Hintons note in their brief that as their cross-appeal is "in the alternative," if we affirm the judgment on the jury's verdict "there will be no need to address the cross-appeal issues." We need not reach the cross-appeal. As we affirm the judgment in favor of the Hintons, a determination on the Hintons' alternative arguments will have no bearing on the issues in the case. Only

dispositive issues need be addressed. *See Lake Delavan Prop. Co., LLC v. City of Delavan*, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632.

¶21 No costs to either party.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.